UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

– against –

JAMAUL AZIZ, JAMES BAZEMORE,
ALBERTO SANTIAGO,

*Defendants.*

**MEMORANDUM & ORDER**
24-cr-00380 (NCM)

---

**NATASHA C. MERLE**, United States District Judge:

Before the Court are the government's and the Federal Bureau of Prisons' ("BOP") requests to redact certain portions of this Court's June 1, 2026, Memorandum and Order (the "Memorandum and Order"). *See* Letters re Redactions, ECF Nos. 238, 240-1. For the reasons stated below, those requests are **DENIED**. The Memorandum and Order shall be filed publicly without redactions.

## BACKGROUND

This case concerns a fatal stabbing at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, a federal detention facility operated by the BOP, which is itself a component of the United States Department of Justice ("DOJ"). Jamaul Aziz, James Bazemore, and Alberto Santiago (collectively the "defendants") are three MDC inmates accused of stabbing another inmate to death in an altercation on July 17, 2024. Mem. & Order 4–5, ECF No. 223.[1] Following the altercation, BOP employees, including officers

---

[1]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers. Where those headers are illegible, page numbers refer to the document's PDF pagination.

1

with the BOP's Special Investigative Services ("SIS") "secured the crime scene, collected the presumed murder weapon and virtually all of the physical evidence, helped prepare FBI agents to interview the defendants, and provided the FBI agents with supplies to collect evidence." Mem. & Order 2. Defendants were subsequently charged with murder under federal law, among other charges. *See* Indictment, ECF No. 1.

On April 16, 2025, the defendants moved for a determination that the BOP was part of the prosecution team for purposes of Rule 16 and *Brady* disclosures. Mot. for Discovery, ECF No. 115. The Court granted that motion in part, issuing the Memorandum and Order, which held that "[a]ny employee of the Bureau of Prisons or BOP Special Investigation Service who actively participated in the investigation of the July 17, 2024, stabbing or otherwise assisted the FBI or [the United States Attorney's Office for the Eastern District of New York] by taking actions related to the incident or the ensuing prosecution [is] held to be a member of the prosecution team for purposes of Rule 16 and *Brady*." Mem. & Order 54.

The Memorandum and Order's reasoning relied in part, and contained quotations from, two internal BOP documents filed under seal: the BOP Crime Scene Management and Evidence Control Program Statement ("Program Statement") and the Special Investigative Supervisors Manual ("SIS Manual" or, collectively with the "Program Statement," the "BOP Policies"). Mem. & Order *passim*. The Court issued the Memorandum and Order under seal in order to provide the government with an opportunity to request redactions to portions that addressed those documents. Mem. & Order 55.

The government ultimately submitted two requests for redaction: one letter filed on its own behalf and another, supplemental letter, written by the BOP and filed by the

government on the BOP's behalf. *See* Gov't Ltr. re Redaction ("Gov't Ltr."), ECF No. 238; BOP Ltr. re Redaction ("BOP Ltr."), ECF No. 240-1.[2] The government's own letter argues—in its single substantive paragraph—that "the Program Statement and SIS Manual constitute sensitive internal policies and guidelines and should be protected from public disclosure pursuant to 32 C.F.R. § 1662.24," a regulation implementing exemptions under the Freedom of Information Act ("FOIA"). *See* Gov't Ltr. 1. Accordingly, it concludes, all quotations from either document should be redacted from the Memorandum and Order. *See* Gov't Ltr. 1; Gov't Proposed Redactions, ECF No. 238-1.

The BOP's "supplemental letter" likewise notes that the Program Statement and SIS Manual are sensitive internal policies that should be protected from disclosure with wholesale redactions—but it also goes further on several fronts. *See* BOP Ltr. 2. First, it observes that the documents have been designated by BOP as "Limited Official Use – Staff Access Only" pursuant to U.S. Department of Justice Order 2620.7, Control and Protection of Limited Official Use Information, and Federal Bureau of Prisons Program Statement 1221.66, Directives Management Manual, Chapter 11. *See* BOP Ltr. 1. The result of that designation, according to the BOP, is that the documents are not public, and their dissemination is tightly controlled. BOP Ltr. 1–2. The BOP argues that that designation justifies redacting any quotations from the documents—and also several of the Court's

---

[2] It is unclear to the Court to what degree, if any, the government adopts the arguments made by the BOP. The government sought the Court's permission "that counsel for the BOP be permitted to file [the] supplemental letter in support of the proposed redactions." Gov't Ltr. 1. But nowhere has it stated explicitly that it joins the BOP's arguments—and, indeed, it has even presented the arguments advanced in its own letter as the positions of "BOP counsel," rather than its own position. *See* Gov't Ltr. 1.

3

own characterizations of their contents. BOP Ltr. 1–2; *see, e.g.*, BOP Proposed Redactions, ECF No. 240-2 at 39.

Next, the BOP argues that such redaction is necessary because the Court's quotations from and characterizations of the documents disclose "extremely sensitive policy directives" regarding the conduct of investigations within BOP institutions. BOP Ltr. 2. Specifically, it states that "quotations contained in the Order describe incidents that would trigger [SIS] staff to initiate an investigation, steps that SIS staff may undertake when investigating misconduct or criminal activity and . . . the interplay between SIS and various outside governmental agencies." BOP Ltr. 2. Other quotations, it contends, "describe the means and methods BOP staff will use to secure and manage a crime scene[ and] the process for collecting and storing evidence, as well as BOP's specific obligations when assisting the U.S. Attorney's Office and outside government agencies." BOP Ltr. 2.

Like the government, the BOP does not attempt to address each redaction individually or to point to specific quotations that particularly raise concerns. Instead, it argues generally that "[p]ublic disclosure" of *any* of the language it seeks to redact (which includes *all* quotations from the relevant documents), "would seriously jeopardize BOP's ability to conduct investigations[.]" BOP Ltr. 2. Specifically, it contends that "[d]issemination of information of the techniques and steps utilized could enable perpetrators of crimes in a BOP facility to thwart an investigation at the outset" by "avoiding the monitoring techniques that might otherwise reveal their criminal activity." BOP Ltr. 2. Given that significant concern, it argues, its redactions, though wholesale, are nevertheless sufficiently "narrowly tailored to meet the purported need." BOP Ltr. 3.

4

The defendants strongly object to the government's and the BOP's proposed redactions. Defs.' Ltr. re Redaction ("Defs.' Ltr."), ECF No. 243. They argue, among other things, that (1) the FOIA provision cited by the government does not require redaction here, Defs.' Ltr. 1; (2) the regulations that BOP relies on to suggest that the documents cannot be disclosed do not purport to bind the judiciary (and explicitly say that they do not even prevent disclosure under FOIA), Defs.' Ltr. 1–2; and (3) portions of the documents that the BOP seeks to wholesale redact from the Memorandum and Order have been publicly released, or at least released in substance, belying the government's argument that complete redaction is necessary, Defs.' Ltr. 2.

More broadly, defendants argue that "none of the information that the government seeks to redact concerns sensitive law enforcement sources or methods, such as a secretive surveillance tool unknown to inmates that would be compromised in the event of public disclosure." Defs.' Ltr. 2. Instead, that information "consists largely of generic, mundane, obvious investigative procedures." Defs.' Ltr. 2. Because neither the government nor the BOP explains how, exactly, that information could be used nefariously (and because its potential nefarious use is not obvious), the defendants contend, the redactions cannot overcome the presumption of public access at issue here, and the Court should reject them. Defs.' Ltr. 2–5.

## LEGAL STANDARD

"Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution." *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (quoting *Mirlis v. Greer*, 952 F.3d

5

51, 58 (2d Cir. 2020)).[3] As the Second Circuit has explained, "[t]he presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo* ("*Amodeo* II"), 71 F.3d 1044, 1048 (2d Cir. 1995).

"Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo* ("*Amodeo* I"), 44 F.3d 141, 145 (2d Cir. 1995)).

"Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. The closer the document is to the core exercise of Article III judicial power, the stronger the presumption in favor of access. *Id.* (citing *Amodeo* II, 71 F.3d at 1049). "The strongest presumption attaches where the documents determine litigants' substantive rights," *Olson*, 29 F.4th at 89, meaning where they form the basis of a court's reasoning, *Lugosch*, 435 F.3d at 121 (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

"Finally, once the weight of the presumption has been assessed, the court is required to balance competing considerations against it." *Olson*, 29 F.4th at 88. "[C]ontinued sealing of the documents may be justified only with specific, on-the-record

---

[3]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

6

findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

"The burden of demonstrating that a document submitted to a court should be sealed," in whole or in part, "rests on the party seeking such action." *Matter of Upper Brook Cos.*, No. 22-mc-00097, 2023 WL 172003, at *2 (S.D.N.Y. Jan. 12, 2023) (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997)).

## DISCUSSION

It is well-settled that court orders are judicial documents, "and that the common law presumption [of public access] therefore attaches" to them. *Hardy v. Equitable Life Assurance Soc'y of United States*, 697 F. App'x 723, 725 (2d Cir. 2017) (summary order) (citing *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) ("[I]t is commonsensical that judicially authored or created documents are judicial records.")); *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) ("A court's decrees, its judgments, its orders, are the quintessential business of the public's institutions."); *see also Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain.").

Further, because orders "determine litigants' substantive rights," a "strongest presumption" of access attaches to them. *Olson*, 29 F.4th at 89, 90. That presumption necessarily applies particularly heavily to the specific language *within* an order that lays out the court's explanation for its determination of those rights. As noted above, the presumption of access "stems from notions of democratic control and judicial accountability." *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2026 WL 145483, at *1 (S.D.N.Y. Jan. 20, 2026). If the public lacks access to an order, it cannot effectively

challenge the order's reasoning or ensure that that reasoning is applied consistently in future cases. *Id.* (citing *Lugosch*, 435 F.3d at 119). The same is necessarily true where the public has access to an order in form only, without access to the specific language within that order that is necessary to understand the order's reasoning. Thus, the public is generally entitled to "*immediate* public access" to that language in particular, unless competing and specific considerations caution otherwise. *Lugosch*, 435 F.3d at 126.

The Memorandum and Order at issue here is, of course, an order, meaning that it is a judicial document that is presumptively public. *See Hardy*, 697 F. App'x at 725. It is also a document that "determine[s] litigants' substantive rights." *Olson*, 29 F.4th at 89, 90. Specifically, it addresses the government's obligations under Rule 16 and *Brady*, and in turn, the defendants' fundamental rights to a fair trial. *See generally* Mem. & Order. Thus, the "strongest presumption" of access applies here. *Olson*, 29 F.4th at 89, 90.

That presumption of access is also *particularly* strong with respect to the portions of the Memorandum and Order that the BOP and the government seek to redact. Those portions are integral to the Court's reasoning for its determination of the scope of the defendants' rights—rights which are important not only to the defendants in this case but also to the public at large. *Cf United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (noting *Brady* and its progeny protect a defendant's right to a fair trial by ensuring the reliability of any criminal verdict against him); *see Jordan v. Lamanna*, 33 F.4th 144, 153 (2d Cir. 2022) (noting that the Sixth Amendment right to a trial provides "protection for the defendant and the public at large");*see also* BOP Ltr. 1 (acknowledging that "the analysis in the Order relies, in part, on the BOP Policies"). In other words, with respect to the proposed redactions at issue in this case, the presumption of access is at its zenith. *Olson*, 29 F.4th at 89–90.

Neither the government nor the BOP has met its burden to rebut that "strongest presumption" of access here, because neither's proposed redactions are "narrowly tailored" to a competing principle that is more important than judicial transparency and accountability. Indeed, the government's letter does not even explicitly identify such a value. *Lugosch*, 435 F.3d at 124. It vaguely invokes the "sensitiv[ity]" of the documents and cites a single FOIA regulation, 32 C.F.R. § 1662.24(e). Gov. Ltr. 1. That regulation, which applies to the Selective Service System, not the DOJ,[4] exempts "special techniques or procedures of investigation or prosecution, not otherwise generally known to the public" from disclosure by that agency under FOIA. 32 C.F.R. § 1662.24(e).

Now, it is true that FOIA exemptions arise from Congress's recognition that "public disclosure of certain government records may not always be in the public interest." *A.C.L.U. v. Dep't of Just.*, 681 F.3d 61, 69 (2d Cir. 2012). Thus, where information would be subject to a FOIA exemption if it were in the hands of a federal agency, at least in theory, that fact might support a conclusion that disclosing that information in a court filing would not be in the public interest. Accordingly, courts have occasionally analogized to FOIA exemptions when evaluating requests to seal. *See, e.g., United States v. Adams*, No. 24-cr-00556, 2025 WL 844340, at *4 (S.D.N.Y. Mar. 18, 2025); *Weise v. U.S. Dep't of State*, No. 24-cv-05760, 2026 WL 851336, at *1 (S.D.N.Y. Mar. 27, 2026). *But see In re Gushlak,* No. 11-mc-00218, 2012 WL 3683514, at *6 (E.D.N.Y. July 27, 2012), *report and*

---

[4]    The regulation falls into Title 32, Chapter XVI, of the Code of Federal Regulations, a chapter applicable to the Selective Service System. *See* 32 C.F.R. § 1662.1 ("The purpose of this part is to describe the Selective Service System's (SSS) policies and procedures for implementing the requirements of the Freedom of Information Act (FOIA) as set forth at 5 U.S.C. [§] 552."). The Selective Service System is an independent executive agency. *See* Selective Serv. Sys., *About Selective Service*, https://www.sss.gov/about/ [https://perma.cc/HS2V-X3F6] (last visited Jul. 16, 2026). It is not a component of the DOJ.

*recommendation adopted*, 2012 WL 3779229 (E.D.N.Y. Aug. 30, 2012) (FOIA cases were inapposite to sealing issue).

However, the actual scope of the exemption the government seeks to invoke here is not as broad as its argument suggests. The relevant regulation—which is 28 C.F.R. § 16.26(b)(5), not 32 C.F.R. § 1662.24(e)—instructs that the DOJ is not required to disclose documents where doing so "would reveal investigatory records compiled for law enforcement purposes, *and* would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5) (emphasis added). But here, the government provides no explanation of how information in each of the quotations it seeks to redact would "interfere with enforcement proceedings" or "impair[]" the effectiveness of any specific "investigative techniques and procedures." 28 C.F.R. § 16.26(b)(5); *see* Gov't Ltr. *passim*. In fact, it provides no analysis of the relevant regualtion at all. Thus, even if this Court were so inclined to rely on that regulation as evidence that law enforcement needs might outweigh judicial transparency here, the government has not shown that the relevant exemption would apply.

For its part, the BOP does attempt to make more robust arguments to carry its burden. Those arguments, however, also fail. The BOP identifies a principle at stake that could, in theory, outweigh the need for judicial transparency: it says that its redactions are necessary to protect its ability to conduct effective investigations. BOP Ltr. 1–2. Specifically, it argues that "[t]o reveal even portions of the BOP Policies would increase the risk that individuals in BOP custody (and even in BOP's employ) could violate the law while avoiding the monitoring techniques that might otherwise reveal their criminal activity." BOP Ltr. 2. But the connection is not inherently clear between that law

10

enforcement concern and the BOP's conclusion that *all* quotations from (as well as the Court's own characterizations of) both documents must be redacted.

For example, the BOP has not made clear how the statement that "[a] primary role of the SIS is to assist in investigations of criminal acts" could be used to thwart such investigations. *See* BOP Proposed Redactions, ECF 240-2 at 3. BOP does not argue, for example, that the existence and role of SIS in general is unknown to anyone outside that division. Nor does it seem revelatory—or useful to bad actors—that, when suspected crimes occur in BOP custody, the BOP has policies to "[p]rocess and document [a] crime scene within a correctional environment; [p]roperly identify, collect, document, and store evidence; [r]elease evidence to other law enforcement or prosecutorial agencies; [and] [f]ulfill subpoenas." *See* BOP Proposed Redactions, ECF No. 240-2 at 10. And it is hard to understand how the statement that SIS officers' "actions are not taken solely for internal penological reasons (such as inmate discipline), but rather in substantial part for the purpose of assisting with criminal prosecutions brought by the U.S. Attorney" reveals any information that could be used to thwart an investigation. *See* BOP Proposed Redactions, ECF No. 240-2 at 39.

Nevertheless, the BOP seeks to redact each of those statements from the Court's Memorandum and Order—and asserts that such redaction is "narrowly tailored" to the values at issue. BOP Ltr. 3. But such an *ipse dixit* does not alone demonstrate the "narrow[] tailor[ing]" required under *Lugosch*. 435 F.3d at 124.

The BOP's "narrowly tailored" assertion is further undermined by the fact that portions of the relevant documents appear to be publicly available, either literally or in substance. In fact, portions of the SIS Manual have apparently been released publicly—and even directly to inmates—without prompting concerns about the integrity of the

11

BOP's investigations. *See* Defs.' Ltr. 2 ("Portions of the Special Investigative Supervisors Manual . . . for example, are part of open-source media posted by the National Association of Criminal Defense Lawyers." (citing Nat'l Assoc. Crim. Def. Laws., SIS Manual ("SIS Manual (Redacted)"), https://www.nacdl.org/getattachment/43f59474-8bdd-4834-81f4-8641ef8642c0/2020-05-19_inmateemail_bopproduction10.pdf [https://perma.cc/QPF7-YCWN] (last visited July 17, 2026))); *Allen v. Dep't of Just.*, No. 17-cv-01197, 2020 WL 474526, at *3 (D.D.C. Jan. 29, 2020) ("BOP had previously provided [a] redacted version [of the SIS Manual] to inmates still in custody.").

Indeed, some of the language left unredacted in the National Association of Criminal Defense Lawyers' version of the SIS Manual could be relevant to the BOP's ability to conduct investigations: for example, the unredacted sections discuss the facts that SIS monitors inmates' phone calls, financial transactions, and correspondence and the BOP maintains liasons with other law enforcement agencies. SIS Manual (Redacted) 10, 18. Yet the BOP makes no effort to explain why *those* portions of the SIS Manual could safely be publicly released, while redactions are necessary for *all* quotations that appear in the Court's Memorandum and Order.[5]

Additionally, as the defense points out, the BOP's director has publicly acknowledged the substance of certain information that the BOP seeks to redact here. For example, the BOP proposes redacting the statement that the SIS Manual charges SIS officers with "[a]cting as . . . [an] assistant to[] Federal, state, and local law enforcement officials in preparing cases for possible prosecution." BOP Proposed Redactions, ECF No.

---

[5] The Court also notes that the government did not seek to seal the transcript of the January 14, 2026, oral argument in this case, even though defense counsel's argument there included characterizations of both the SIS Manual and the Program Statement. *See* Tr. 36:10–37:07, ECF No. 214.

240-2 at 3. But the BOP's director has acknowledged in public congressional testimony that the "BOP provides continuous support for inquiries from the Office of Inspector General (OIG), the Federal Bureau of Investigation (FBI), and prosecutors, including evidence collection and procedural expertise, as needed," and that the "BOP collaborates with agencies such as OIG, the FBI, United States Attorney's Offices (USAOs), and other federal and local law enforcement entities." *Oversight of the Federal Bureau of Prisons: Hearing Before the S. Comm. On the Judiciary*, 118th Cong. 2–3 (Sept. 13, 2023) (written responses of Colette Peters, BOP Director, to questions submitted by Sen. Cory Booker), https://www.judiciary.senate.gov/imo/media/doc/2023-09-13_-_qfr_responses_-_peters.pdf [https://perma.cc/R6G3-6KWG] (last visited Jul. 17, 2026).

The Court finds it difficult to understand what, if anything, the relevant proposed redactions reveal that is materially different from the BOP director's testimony such that *they* overcome the presumption of public access and warrant sealing, while the testimony did not. And, again, the BOP provides no particularized explanations here—for these or any other redactions that it proposes—that would distinguish the information it seeks to redact from information that is already publicly available. It argues simply that *all* quotations to the BOP Policies that appear in the Court's Memorandum and Order must be redacted.

To put a finer point on the issue: the fact that portions of the documents have been revealed publicly, either literally or in substance, strongly indicates that the government's and the BOP's proposed wholesale redactions are not "narrowly tailored." *See* BOP Ltr. 3. Rather, they are distinctly overbroad.

The BOP's analogies to FOIA's "law enforcement" exemption also fair no better than the government's. *See, e.g.*, BOP Ltr. 1. Though the BOP does not cite FOIA or its

13

regulations explicitly, it seems to invoke the DOJ's regulation by tracking its language: the BOP argues that the documents at issue are "compiled for law enforcement purposes and disclose techniques and procedures for law enforcement investigations or prosecutions and disclose guidelines for law enforcement prosecution." BOP Ltr. 1; *compare* BOP Ltr. 1 (same), *with* 28 C.F.R. § 16.26(b)(5) (mentioning documents "compiled for law enforcement purposes" and "disclos[ing] investigative techniques and procedures"). And it observes that both documents contain references to investigative procedures. Specifically, it notes that the SIS Manual discusses "incidents that would trigger Special Investigative Services . . . staff to initiate an investigation, steps that SIS staff may undertake when investigating misconduct or criminal activity and . . . the interplay between SIS and various outside governmental agencies." BOP Ltr. 2. And it observes that the Program Statement contains "policy directives that describe the means and methods BOP staff will use to secure and manage a crime scene, the process for collecting and storing evidence, as well as BOP's specific obligations when assisting the U.S. Attorney's Office and outside government agencies." BOP Ltr. 2. Thus, even though it does not explicitly invoke FOIA, the Court understands the BOP's letter to be implicitly addressing the same regulatory provision discussed above.

However, like the government, the BOP has failed to articulate with any particularity *how* information in each (or any) of the quotations it seeks to redact would "interfere with enforcement proceedings" or "impair[]" the effectiveness of any specific "investigative techniques and procedures." 28 C.F.R. § 16.26(b)(5). In fact, its letter, too, is silent on that issue. *See generally* BOP Ltr. Thus, the BOP's own analogy to FOIA falls flat as well.

14

Finally, the BOP's internal confidentiality designation cannot save its redactions either. "A party's designation of material as confidential does not necessarily provide justification for it to be filed under seal." *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-cv-00007, 2024 WL 2387396, at *4 (E.D.N.Y. May 23, 2024). Indeed, here, the "Limited Official Use – Staff Access Only" designation is explicitly not grounds for withholding access to a document, even in the context of FOIA: according to the policy cited in the BOP's letter, "[t]he identification of material as Limited Official Use information has no connection with the Freedom of Information Act . . . and cannot be used as a reason for approving or denying FOIA requests." U.S. Dep't of Just., Order 2620.7(9), Control and Protection of Limited Official Use Information (2024); *see* BOP Ltr. 1. Thus, the "Limited Official Use – Staff Access Only" designation alone is not enough to overcome the presumption in favor of access either.

Accordingly, both the government and the BOP have failed to meet their burden to demonstrate that their proposed wholesale redactions are "necessary to preserve higher values and . . . narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. Thus, their requests are denied.

## CONCLUSION

For the foregoing reasons, the government's motion to redact the June 1, 2026, Memorandum and Order is **DENIED**.

The Court is issuing the instant Order under seal because it contains quotations from internal BOP documents, but the Court will subsequently unseal both this Order and the June 1, 2026, Memorandum and Order on July 23, 2026.

**SO ORDERED.**


    */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge


Dated:      July 20, 2026
           Brooklyn, New York