UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

JAMAUL AZIZ, JAMES BAZEMORE, ALBERTO SANTIAGO,

*Defendants.*

**MEMORANDUM & ORDER**
24-cr-00380 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Defendants Jamaul Aziz, James Bazemore, and Alberto Santiago have been charged with committing murder in a federal detention facility, among other, lesser charges. In support of their defense, they have requested a third-party subpoena pursuant to Rule 17 of the Federal Rules of Criminal Procedure, seeking information and files related to violent incidents that occurred in the facility where the alleged murder took place. Before the Court is the government's motion to quash that subpoena. Because the Court concludes that (1) the government has standing to challenge the subpoena and (2) defendants have not met their burden to demonstrate that they had the requisite personal knowledge of the incidents at issue prior to the alleged murder, the government's motion is **GRANTED**.

## BACKGROUND

### I. Factual Background

The main events in this case took place on July 17, 2024, in Housing Unit G-43 of the Metropolitan Detention Center ("MDC"). Mot. Quash ("MTQ") 1, ECF No. 255.

Surveillance footage from that day shows that around 2:20 p.m., the alleged victim, Edwin Cordero, and Santiago were involved in a physical alteration. Gov't Exhibit 1 at 00:40:33. The parties agree that at that time, Cordero approached Santiago from behind and cut the right side of Santiago's head. MTQ 2 ("Cordero cut Santiago near his right ear."); Opp'n 2, ECF No. 261 ("Cordero . . . successfully slashed Santiago's head."). The two then separated for approximately half an hour. MTQ 2; Opp'n 2. Then, shortly before 2:50pm, Cordero approached Santiago again, and the two began to fight. MTQ 2; Opp'n 2–3; Gov't Exhibit 1 at 01:08:09. Aziz and Bazemore joined the altercation, assisting Santiago, and a fifth inmate, Charles Carter, joined to aid Cordero. MTQ 2; Gov't Exhibit 1 at 01:08:20. By the end of the fight, Cordero had been stabbed by the defendants multiple times. MTQ 2; Gov't Ex. 1 at 01:08.49–01:09:13, ECF No. 255-1. He ultimately succumbed to his wounds. MTQ 3.

## II. Procedural History

On September 24, 2024, a grand jury returned an indictment charging Aziz, Santiago, and Bazemore with four crimes arising out of the events of July 17, 2024: premeditated murder within a federal detention facility, conspiracy to commit murder within a federal detention facility, assault resulting in serious bodily injury within a federal detention facility, and possession of one or more objects designed to be used as weapons within a prison. *See* Indictment, ECF No. 1.

On July 22, 2026, defendants moved the Court to issue a Rule 17 subpoena directed to MDC ("the Subpoena"). Mot. for Discovery, ECF No. 249. The Subpoena sought various documents, photos, and video footage related to incidents at MDC involving physical violence and weapons in the approximately two years prior to the homicide at issue in this case. Proposed Subpoena, ECF No. 249-1. Specifically, the Subpoena requested:

1. All video recordings of "incidents involving an act of physical violence occurring within MDC West between June 30, 2022 through July 17, 2024, excluding (a) the July 17, 2024 assault of Edwin Cordero; and (b) a November 16, 2023 assault involving Eric Nunez."
2. "All photographs of any injury suffered by any inmate or staff member" during those violent incidents.
3. All photographs of "any weapon recovered in MDC West from June 30, 2022 through July 31, 2024, including but not limited to knives, blades, shanks, shivs, ice picks, or any other metal object with a pointed or sharp edge," excluding weapons "lawfully possessed . . . by MDC employees."
4. "Documents sufficient to identify the date, time, location, and individuals associated with" the violent incidents and/or weapons identified in response to defendants' earlier requests.

Proposed Subpoena 2. The defendants maintain that those incidents and weapons are relevant to their justification defense. Mot. for Discovery 3.[1]

Two days later, on July 24, 2026, the Court granted defendants' request to issue the Subpoena; however, shortly thereafter, the government moved the Court to reserve its decision on that order until the government had an opportunity to respond. *See* Jul. 24, 2026 Letter Mot., ECF No. 251. The Court granted the government a week to file its motion to quash, ordering that the motion address "among other things, the basis for its standing to move to quash the subpoena at issue," given caselaw suggesting that the

[1] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

government generally lacks standing to challenge Rule 17(c) subpoenas to third parties, subject to certain narrow exceptions. Docket Entry Order dated Jul. 24, 2026 (citing *United States v. Nachamie*, 91 F. Supp. 2d 552, 560–61 (S.D.N.Y. 2000)).

On July 31, 2026, the government moved, pursuant to Rule 17(c)(2) to quash the Subpoena. MTQ. The motion argues (1) that the government has standing and (2) that defendants have not met their burden to show that the Subpoena seeks only materials that are relevant, admissible, and specifically identified, as required by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974). MTQ 6–14. Among other arguments, the government urges that defendants have not shown that they had prior personal knowledge of the violent incidents about which the subpoena seeks information, as required for those incidents to be relevant under New York's standard for justification. MTQ 6–7.

On August 7, 2026, defendants opposed the government's motion, arguing that the subpoena meets the *Nixon* standard, including its relevance requirement, and that, in any event, the government lacks standing to oppose the subpoena. Opp'n, ECF No. 261.

## DISCUSSION

### I. Standing

The Court begins with the threshold issue of standing. "A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *United States v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000).[2] However, "[c]ourts in the Second Circuit have acknowledged that the government has standing to challenge a Rule 17(c) subpoena

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

directed to a non-party when the subpoenaed party authorizes the government to assert his or her rights by request, by indicating its joinder in a motion to quash, or by forwarding responsive material to the government." *United States v. Bergstein*, No. 16-cr-00746, 2017 WL 6887596, at *2 (S.D.N.Y. Dec. 28, 2017); *see also United States v. Martoma*, 962 F. Supp. 2d 602, 605 n.4 (S.D.N.Y. 2013) (collecting cases).

In keeping with that acknowledgement, the court in *United States v. Barnes* held that the government had standing to bring a motion to quash a Rule 17 subpoena directed at the MDC. 04-cr-00186, 2008 WL 9359654, at *1 (S.D.N.Y. Apr. 2, 2008). In that case, a Senior Staff Attorney at the MDC had contacted the government after being served with the subpoena and requested that the government file a motion to quash on behalf of the Bureau of Prisons. *Id.* "Because the MDC ha[d] requested that the [g]overnment intervene on its behalf," the court concluded that the government had standing to challenge the subpoena. *Id.*

Here, as in *Barnes*, the government reports that the MDC, the would-be recipient of the Subpoena, has joined its motion to quash. MTQ 6 (noting that a "Supervisory Attorney [at the MDC] . . . has conferred with the government . . . [and] joins in the government's motion"). Defendants have identified no reason to believe that this case is materially different from *Barnes*. They attempt to distinguish the two cases only by arguing that *Barnes* "does not appear to have involved repeated representations by the Government to the court about a wall of separation between the [g]overnment and MDC." *See* Opp'n 2. That argument refers to statements made by the government during an earlier discovery dispute regarding whether the MDC and its employees should be considered part of the prosecution team for purposes of the government's Rule 16 discovery obligations. *See United States v. Aziz*, 837 F. Supp. 3d 449, 460 (E.D.N.Y. 2026)

(resolving said dispute). The government had argued, among other positions, that the federal Bureau of Prisons—of which MDC is a part—had separate counsel and a distinct review and approval process for discovery requests raised by defendants. *Id.* at 479–80. Ultimately the Court determined, contrary to the government's arguments, that some, but not all, MDC employees should properly be considered part of the prosecution team. *Id.* at 480.

With respect to the instant dispute, however, defendants have failed to explain how the government's assertions about separation between itself and MDC in that earlier dispute would negate or undermine MDC's decision to join the government's motion to quash now. The defendants have not pointed to any caselaw suggesting that that issue is relevant to the standard for evaluating standing with respect to a motion to quash. And indeed, courts have regularly permitted the government to challenge Rule 17 subpoenas on behalf of non-parties, including victims and witnesses, without suggesting that such permission necessarily collapses the distinction between the government and those nonparties. *See, e.g.*, *United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020) (noting government's standing to move to quash subpoenas directed to alleged victims upon the victims' request but observing that the government does not act as victims' lawyer); *Barnes*, 2008 WL 9359654, at *1 (holding government had standing to quash subpoena to MDC, with no discussion of MDC employees as members of the prosecution team); *United States v. Gogic*, No. 22-cr-00493, 2025 WL 2371008, at *2 (E.D.N.Y. Aug. 14, 2025) (holding government had standing to quash subpoena to Customs and Border Patrol, with no discussion of Customs and Border Patrol witnesses as members of the

prosecution team).[3] Thus, the Court sees nothing inherently contradictory in the government's position here.

Accordingly, as in *Barnes*, the government here has standing to challenge the Subpoena.[4] Further, "[w]ith the benefit of briefing from both sides, the Court is now in a better position to assess the appropriateness of the Subpoena[]." *Bergstein*, 2017 WL 6887596, at *3.

## II. Motion to Quash

"[U]nlike their civil counterparts, [federal] criminal proceedings have no extensive discovery procedures requiring both sides to lay their evidentiary cards on the table before trial." *United States v. Sampson*, 898 F.3d 270, 280 (2d Cir. 2018) (quoting *United States v. Pope*, 613 F.3d 1255, 1259–60 (10th Cir. 2010)). Instead, discovery in criminal cases is governed mainly by Rule 16 of the Federal Rules of Criminal Procedure, which "provides, in pertinent part, that a defendant is entitled to obtain from the [g]overnment documents and objects that are within the government's possession, custody, or control[,] if they are material to preparing the defense or will be used by the [g]overnment in its case-in-chief

---

3 For this reason, contrary to the defendants' arguments, the MDC's joinder of the government's motion also does not indicate that the MDC as a whole should be considered part of the prosecution team for purposes of Rule 16 or *Brady* disclosures. *See* Opp'n 2. The Court accordingly declines defendants' invitation to reopen its prior ruling on that issue.

4 Because the Court concludes that the government has standing on the basis of the MDC's joinder, the Court does not address—and does not need to address—the government's arguments that it has standing based on its own independent interests or that its standing is irrelevant given the Court's independent duty to review the propriety of a Rule 17 subpoena. MTQ 5–6 (citing the *United States v. Vasquez*, 258 F.R.D. 68, 71–72 (E.D.N.Y. 2009)).

at trial." *United States v. Neumann*, No. 21-cr-00439, 2022 WL 3445820, at *16 (S.D.N.Y. Aug. 17, 2022).

Because Rule 16 applies only to material information in the government's possession, custody, or control, it broadly limits the information available to the defendant in criminal discovery. *United States v. Wallace*, No. 15-cr-00794, 2016 WL 4367961, at *12 (S.D.N.Y. Aug. 11, 2016), *aff'd*, 937 F.3d 130 (2d Cir. 2019). However, Rule 16 is not the only source of discovery for criminal defendants. The government has constitutional and statutory discovery obligations under the Jencks Act, 18 U.S.C. § 3500(b), and under *Brady v. Maryland*, 373 U.S. 83, (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. *Sampson*, 898 F.3d at 280. And, as relevant here, defendants may seek third-party discovery under Federal Rule of Criminal Procedure 17.

Rule 17 provides, in relevant part, that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" for inspection before and use at trial. Fed. R. Crim. P. 17(c)(1). However, courts have been careful to emphasize that "Rule 17 is not a method of discovery that supplements Rule 16." *United States v. Cole*, No. 19-cr-00869, 2021 WL 912425, at *3 (S.D.N.Y. Mar. 10, 2021) (quoting *United States v. Blakstad*, No. 19-cr-00486, 2020 WL 5992347, at *11 (S.D.N.Y. Oct. 9, 2020)). Its purpose is "to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material." *See United States v. Maxwell*, No. 20-cr-00330, 2021 WL 1625392, at *1 (S.D.N.Y. Apr. 27, 2021) (citing *Nixon,* 418 U.S. at 698–99). Given that purpose, courts must be careful "not to allow the Rule 17(c) process to become a broad discovery device that would undermine the discovery procedures"—and limitations—"set forth in Rule 16." *Id.*

In keeping with that concern, courts, including the Supreme Court, have robustly interpreted a court's power to quash or modify a subpoena where "compliance would be unreasonable or oppressive" under Rule 17(c)(2). To avoid quashing, the party seeking compliance with the subpoena must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition.

*Nixon*, 418 U.S. at 699–700.[5]

Courts have summarized the main requirements under *Nixon* as "(1) relevancy; (2) admissibility; (3) specificity." *See United States v. Harrell*, No. 20-cr-00239, 2026 WL 571256, at *3 (E.D.N.Y. Mar. 2, 2026) (citing *Nixon*, 418 U.S. at 700). "To satisfy these requirements, 'the items sought cannot merely be potentially relevant or admissible. Rather, they must be shown to be relevant and admissible at the time the subpoena is sought.'" *United States v. Wey*, 252 F. Supp. 3d 237, 253 (S.D.N.Y. 2017) (quoting *Barnes*, 2008 WL 9359654, at *3). However, "a Rule 17(c) subpoena does not need to detail the exact contours of materials to which its proponent does not have access" to meet the specificity requirement. *United States v. Chirico*, No. 25-cr-00365, 2026 WL 1760129, at *6 (S.D.N.Y. June 18, 2026) (citing *United States v. Bergstein*, No. 16-cr-00746, 2018 WL

5 One court in this circuit has applied a more lenient standard. *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008). However, that standard has been widely rejected by other district courts in the circuit. *See United States v. Skelos*, No. 15-cr-00317, 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018). As a result, though the Second Circuit has yet to definitively resolve the issue, courts within it "have almost unanimously applied *Nixon* to subpoenas served on third-parties." *United Sates v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019). The parties agree the *Nixon* standard applies to the Subpoena at issue here. Mot. for Discovery 1–2; MTQ 5; Opp'n 1.

9539856, at *1 (S.D.N.Y. Jan. 22, 2018)). Rather, that "requirement is 'intended to provide the subpoenaed party with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility.'" *Id.* (quoting *United States v. Donziger*, No. 19-cr-00561, 2021 WL 1865376, at *8 (S.D.N.Y. May 10, 2021)).

A court may quash a motion for a Rule 17(c) subpoena for failing to meet any one of the *Nixon* prongs. *See Bergstein*, 2017 WL 6887596, at *4 (citing *Nixon*, 418 U.S. at 699–700); *see also United States v. Conway*, 615 Fed. App'x 46, 48–49 (2d Cir. 2015) (summary order) (holding that the district court "did not err" in denying subpoena when claim "fail[ed] to satisfy the relevancy prong of *United States v. Nixon*").

The parties in this case dispute whether defendants have met their burden to demonstrate each of the three main *Nixon* requirements, contesting whether (1) the Subpoena seeks documents that are relevant to defendants' justification defense; (2) those documents would be admissible; and (3) the Subpoena describes those documents with sufficient specificity or instead "smacks of a fishing expedition." *Compare* MTQ 6–14 *with* Opp'n 2–4 *and* Mot. for Discovery 3–6. Upon consideration of both parties' filings, the Court agrees with the government that defendants have not met their burden to demonstrate that the subpoenaed materials are relevant to their defense.

"Because self-defense is 'a matter of federal common law,' federal courts look to state law for guidance as to when it is appropriately charged." *United States v. Hidalgo*, 736 F. App'x 255, 257 (2d Cir. 2018) (quoting *United States v. Desinor*, 525 F.3d 193, 199 (2d Cir. 2008)). "Under New York law, the defense of justification involves both subjective and objective elements." *United States v. Davis*, 531 F. App'x 65, 68 (2d Cir. 2013) (citing *People v. Goetz*, 68 N.Y.2d 96, 114–15 (1986)). "[A] defendant may argue self-defense where he reasonably believes physical force to be necessary to defend himself from what

he reasonably believes to be the use or imminent use of unlawful physical force by another person." *Hidalgo*, 736 F. App'x at 257 (first quoting N.Y. Penal Law § 35.15(1); and then citing *Goetz*, 68 N.Y.2d at 114). Deadly force is permitted where the defendant "reasonably believes that [the alleged victim] is using or about to use deadly physical force" and the defendant may not retreat with safety.[6] *See* N.Y. Penal Law § 35.15(2). The same defense is available on equal terms to a defendant who defends a third person from unlawful force, including deadly force. *See* N.Y. Penal Law § 35.15(1)-(2).

With respect to the "reasonable belie[f]" component of that defense, a determination of reasonableness "must be based on the circumstances facing a defendant or his situation." *Goetz*, 68 N.Y.2d at 114. "[Those] circumstances encompass any prior experiences he had which could provide a reasonable basis for a belief that another person's intentions were to injure . . . him or that the use of deadly force was necessary under the circumstances." *Id.* Accordingly, relevant "'prior experiences' are not limited to those involving the victim, but instead may encompass any experiences of the defendant that logically bear on the defendant's subjective state of mind at the time of the charged crime." *People v. Douglas*, 809 N.Y.S.2d 36, 40 (App. Div. 1st Dep't 2006).

That being said, acts that were *unknown* to the defendant at the time of the crime charged logically cannot have borne on his state of mind. *See People v. Saladeen*, 146 N.Y.S.3d 263, 265 (App. Div. 1st Dep't 2021). Thus, "[e]vidence of past violent acts is only exculpatory in New York if the defendant asserting a justification defense knew of those acts" at the time of the encounter at issue. *Washington v. Brown*, No. 09-cv-00544, 2009

---

6 The law provides certain exceptions to this duty to retreat. *See* N.Y. Penal Law § 35.15(2). However, none appear to be relevant here.

WL 1605553, at *4 (E.D.N.Y. June 8, 2009); *see also People v. Guerra*, 39 N.Y.3d 1158, 1159 (2023) (holding that prior violence by a victim is inadmissible "unless the defendant was aware of the specific acts at the time of the assault").

For that reason, New York appellate courts have regularly rejected information as irrelevant to a justification defense where the defendant has not shown that he was aware of that information prior to the incident at issue. For example, in *People v. Watson*, the Second Department held that because the defendant had lacked the requisite knowledge of the victim's prior criminal acts of violence, the trial court had correctly denied admission of evidence of those acts. 923 N.Y.S.2d 219, 220–21 (App. Div. 2d Dep't 2011), *aff'd on other grounds*, 20 N.Y.3d 1018 (2013). Similarly, in *People v. Wilson*, the Second Department affirmed a trial court's decision not to disclose a copy of the victim's criminal record where the defendant had "failed to demonstrate that he was aware at the time of the shooting" that the victim had been arrested or convicted for violent crimes. 896 N.Y.S.2d 419, 420 (App. Div. 2d Dep't 2010). And in *People v. Hairston*, the Second Department affirmed limitations on testimony concerning prior violent acts involving third persons present at the scene of the crime because the defendant had not made "a sufficient showing that he had been present at or otherwise knew of the alleged acts of violence" involving those persons prior to the homicide at issue. 640 N.Y.S.2d 589, 589 (App. Div. 2d Dep't 1996).

In contrast, where the defendant *has* made a sufficient showing of personal knowledge of prior violent acts that he argues affected his state of mind, New York's Appellate Division has held those acts relevant, even when the victim himself was not directly involved in them. *Douglas*, 809 N.Y.S.2d at 40. In *Douglas*, for example, the defendant had been kidnapped at gunpoint the day before the charged homicide occurred.

*Id.* at 39. Though the alleged victim had not been present for the kidnapping, the defendant's own testimony and testimony by a second kidnapped individual, the defendant's friend, would have substantiated the incident and connected the victim to the perpetrators. *Id.* Nevertheless, the trial court limited the testimony related to that incident, reasoning that it not sufficiently relevant to admit. *Id.* The Second Department rejected that conclusion, holding that the fact that the "defendant was victimized in a gunpoint attack and subsequently threatened by persons closely associated with [the alleged victim] less than a day before the shooting" was "highly relevant" to a justification defense. *Id.* at 40. "The fact that [the alleged victim] was not present during the . . . kidnapping/robbery d[id] not justify the [trial] court's ruling" because the event would "logically [have borne] on the defendant's subjective state of mind at the time of the charged crime" regardless of that fact. *Id.* Accordingly, the Second Department vacated the defendant's conviction and remanded the case for a new trial. *Id.* at 43.

Given that legal background, a critical question here is whether defendants have sufficiently substantiated their personal knowledge of the violent incidents about which they seek discovery. To support that personal knowledge, the defendants argue that

> the Government does not—and cannot—dispute that word of such incidents travels quickly and widely in the MDC. That reality is well known to inmates, guards, defense lawyers, and prosecutors who have routine dealings with the MDC. And the Government does not appear to contest that the Defendants would have knowledge of violence in their own housing unit.

Opp'n 4; *see also* Mot. for Discovery (making similar statements, also without citation to supporting evidence or documentation).

That argument misapprehends the burden here. It will ultimately be the government's burden at trial to disprove the defendants' justification defense beyond a

reasonable doubt, should defendants raise that defense. *See United States v. Watson*, No. 21-1562-cr, 2022 WL 17660546, at *4 (2d Cir. Dec. 14, 2022) (summary order). But it is the *defendants'* burden at this stage to demonstrate that their proposed subpoena meets the *Nixon* standard, including its relevancy requirement. *See Barnes*, 560 F. App'x at 39–40. Their briefing related to the Subpoena has provided the Court with no evidence (as opposed to bare statements) on which to rest a finding that the defendants had personal knowledge of the events about which they seek information. Accordingly, the Court finds that they have failed to meet their burden, and their subpoena must be quashed. *Cf. United States v. Abdush-Shakur*, 465 F.3d 458, 468 (10th Cir. 2006) (in prison assault case, quashing similar Rule 17 subpoena seeking information about inmate-on-inmate stabbings and inmate-on-guard stabbings, among other records, for failure to sufficiently explain the relevance of those records to the defendant's justification defense).

However, the Court declines the government's invitation to hold at this time that evidence of prior violent incidents at MDC would be *categorically* irrelevant to a hypothetical justification defense. *See* MTQ 8 (citing *People v. Torres*, 480 N.Y.S.2d 60 (App. Div. 3d Dep't 1984)). It is true that the Third Department has held that "[g]eneral conditions within a prison are insufficient to authorize justification as a defense for an assault." *Torres*, 480 N.Y.S.2d at 61. But in *Torres*, the defendant appears to have proffered evidence only of a general atmosphere of racialized fear and violence at the prison. *Id.* (explaining that the proffered evidence would have demonstrated "that defendant, as a Hispanic inmate, was fearful of attack by any number of [B]lack inmates in the prison" prior to stabbing the alleged victim, who was Black, in a prison altercation). That does not squarely address whether evidence of *specific* prior violent incidents in a prison that were known to a defendant—and, perhaps, evidence of the prison's

institutional reaction to those incidents, of which a defendant was also aware—may ever qualify as "experiences of the defendant that logically bear on the defendant's . . . state of mind at the time of [a] charged crime." *Douglas*, 809 N.Y.S.2d at 40.

Nor does the government's other New York state case on this issue, *People v. Palmer*, move the needle. MTQ 8 (citing *People v. Palmer*, 596 N.Y.S.2d 522 (App. Div. 3d Dep't 1993)). There, the court held that the "[d]efendant's generalized and unspecific testimony that he had seen correction officers beat inmates fails, as a matter of law, to justify a necessity defense" in a case charging him with obstructing and menacing certain corrections officers. *Palmer*, 596 N.Y.S.2d at 524. However, the court so decided in part because the defendant's *own admissions* undercut his purported fear of the officers: he had "acknowledged that he had a fairly good relationship with the officers" whom he was accused of menacing prior to the incident at issue and that he "had no previous trouble with them during his 11–month stay at the jail." *Id.* Thus, that case, too, cannot bear the weight of a categorical bar.

The government's additional out-of-circuit cases are of limited help, as well. First, they do not address New York self-defense law. *See United States v. Jennings*, 855 F. Supp. 1427, 1435 (M.D. Pa. 1994), *aff'd*, 61 F.3d 897 (3d Cir. 1995) (appearing to apply general federal common law without reference to state self-defense law); *United States v. Gometz*, 879 F.2d 256, 258 (7th Cir. 1989) (same); *United States v. Holt*, 79 F.3d 14, 16 (4th Cir. 1996) (same); *United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (same). The parties agree that New York law should guide this Court in assessing relevance. Mot. for Discovery 2; MTQ 7–8. Accordingly, cases addressing other self-defense standards can provide only limited guidance here.

Further, each case involved circumstances materially different from those here. Specifically, in all four, there was little, if any, evidence that the defendants were in danger of imminent harm at the time of their charged conduct. *Jennings*, 855 F. Supp. at 1435 (noting that "[n]o aggressive action was taken [by officers whom defendant assaulted] . . . until well after [defendant's] initial refusal to exit the cell"); *United States v. Gometz*, 879 F.2d 256, 259–60 (7th Cir. 1989) (defendant sought instruction that threat of harm did not have to be close in time to assault to apply a justification defense); *Holt*, 79 F.3d at 16 ("Holt has failed to produce any evidence that he was under imminent threat of death or bodily injury when he possessed the knife" for which he had been charged); *Abdush-Shakur*, 465 F.3d at 466 (expert witness would have explained "why an inmate who is 'disrespected'"—*i.e.*, rather than assaulted—"by a corrections officer might retaliate in a violent manner").

In contrast, here, the parties agree that Cordero had slashed Santiago with a sharp metal weapon shortly before the altercation that resulted in Cordero's death. Mot. for Discovery 2, MTQ 9. They disagree regarding whether Santiago remained in imminent danger when Cordero approached him again following that slashing. Mot. for Discovery 2 (noting "Cordero repeatedly—and without provocation—attacked Santiago with a sharp metal weapon mere minutes before Cordero's death"); MTQ 9 (noting that over 30 min passed between that slashing and the ultimate altercation, during which time the defendants met, away from Cordero). But even conceding that disagreement, there appears to be significantly stronger evidence here than in any of the cases described above

to support defendants' argument that Santiago was in imminent danger at the time of the alleged murder.[7]

As a result, the Court does not view any of the cases raised by the government as necessarily foreclosing evidence related to specific custodial incidents from potential relevance in this case—at least, provided that the defendants can properly show personal knowledge of them.[8] Thus, the defendants' subpoena is quashed without, rather than with, prejudice to renewal.

---

7 *Abdush-Shakur* is additionally less than clarifying, because there, the defendant's Rule 17 subpoena request foundered not on an affirmative finding of irrelevance but instead on the defendant's failure to explain the relevance of his requests at all. 465 F.3d at 467. Rather than providing such an explanation, the defendant "merely stated the requested documents were material and integral to the defense and that they were evidentiary, relevant, and requested in good faith," parroting the *Nixon* standard. *Id.* at 468. The court understandably found that insufficient to carry the defendant's burden. *Id.* However, such a failure does not indicate that the subpoenaed information can *never* be relevant to a self-defense claim. Instead, it indicates only that the barebones explanation provided by the defendant in that case was inadequate to demonstrate the necessary relevance.

8 The Court also declines to evaluate the defendants' ability to safely retreat based solely on the provided security footage. *See* MTQ at 8–9 (arguing that the footage shows that the defendants failed to take "multiple opportunities to retreat from the attack"). The defendants hotly contest the government's interpretation of that footage, *see* Opp'n 2–3, placing such interpretation firmly in the province of the jury, *see United States v. Polanco*, No. 19-cr-00354, 2020 WL 1503672, at *2 (S.D.N.Y. Mar. 30, 2020) (declining to resolve, on a pretrial motion, a dispute over what surveillance video showed, because "it would be . . . inappropriate[] to preempt the jury's function on factual grounds at the pretrial stage"); *United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018) (holding that when a party's argument raises dispositive evidentiary questions, a district court must defer resolving those questions until trial."); *see also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017) (collecting cases for the proposition that "the mere existence of a videotape in the record depicting some or all of the events in dispute" alone will not necessarily resolve factual disputes over the events depicted).

## CONCLUSION

For the reasons explained above, the Court **GRANTS** the government's motion to quash without prejudice.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: October 28, 2026
Brooklyn, New York